Kermit A. Rosenberg (VSB #14975)
Butzel Long Tighe Patton, PLLC
1747 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20006-4604
Telephone: 202.454.2800
Facsimile: 202.454.2805
Email: krosenberg@butzeltp.com
Proposed Counsel for Debtor

UNITED STATES BANKRUPTCY COURT
FOR THE
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FITNESS RESOURCE, INC., | ) | Case No. 11-16630-BFK |
| | ) | (Chapter 11) |
| Debtor. | ) | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER:
(A) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS,
(B) AUTHORIZING USE OF EXISTING BUSINESS FORMS, AND
(C) AUTHORIZING USE OF EXISTING CASH MANAGEMENT SYSTEM**

The Debtor, FITNESS RESOURCE, INC., hereby moves this Court for entry of an order, pursuant to Sections 105 and 363 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code" or "Code"), and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (a) authorizing, but not directing, continued maintenance of the Debtor's existing bank accounts, and authorizing a waiver of certain operating guidelines relating to the bank accounts; (b) authorizing, but not directing, the Debtor's continued use of existing business forms; and (c) authorizing and directing the Debtor's continued use of its existing cash management system. In support of its Motion, the Debtor relies upon and incorporates by reference the Declaration of David E. Nees, President of Fitness Resource, Inc. in Support of Chapter 11 Petition and First Day Pleadings ("Nees Declaration"), filed concurrently with the

1

Court in this bankruptcy proceeding. In further support of the Motion, the Debtor respectfully states the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2. Venue in this district with respect to the bankruptcy proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Sections 105(a) and 363 of the Bankruptcy Code, and such relief is warranted under Bankruptcy Rule 6003.

## BACKGROUND

4. On September 9, 2011, the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code and continues to manage its business as debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108. The factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of its bankruptcy case, is set forth in detail in the Declaration of David E. Nees, President of Fitness Resource, Inc., in Support of Chapter 11 Petition and First Day Pleadings (the "Nees Declaration"), filed concurrently herewith and incorporated herein by reference.

6. No trustee or examiner has been appointed in this Chapter 11 case, and no committees have yet been appointed or designated.

7. Fitness Resource sells fitness equipment and bicycles in 15 retail stores located throughout Virginia, Maryland, and Georgia, and fitness equipment and flooring to commercial

customers in the District of Columbia, Virginia, Maryland, North Carolina, South Carolina, and Georgia.

### RELIEF REQUESTED

8. By this Motion, the Debtor seeks entry of an order by this Court, pursuant to Sections 105(a) and 363 of the Bankruptcy Code: (a) authorizing, but not directing, continued maintenance of the Debtor's existing bank accounts, and authorizing a waiver of certain operating guidelines relating to the bank accounts as set forth in the United States Department of Justice, Office of the United States Trustee: Guidelines for Debtors-in-Possession (the "U.S. Trustee Guidelines"), as adopted by the Office of the United States Trustee for the Eastern District of Virginia; (b) authorizing, but not directing, the Debtor's continued use of existing business forms; and (c) authorizing and directing the Debtor's continued use of its existing cash management system.

### ARGUMENT

**A.    The Debtor Should Be Granted Authority to Maintain Its Existing Bank Accounts.**

9. Pursuant to the U.S. Trustee Guidelines, a Chapter 11 debtor is required to, among other things: (i) close all existing bank accounts and open new debtor-in-possession bank accounts for which the signature cards shall indicate that the debtor is a "Chapter 11 Debtor-in Possession"; (ii) establish a new payroll account; and (iii) maintain any funds in excess of the amount required for current operations in an interest-bearing account. Pursuant to Sections 105(a) and 363, the Debtor seeks a waiver of the foregoing requirements in order to continue using the Debtor's existing bank accounts.

10. Prior to the initiation of this bankruptcy proceeding, the Debtor maintained, in the

3

ordinary course of business, five (5) individual bank accounts) through which the Debtor managed cash receipts and disbursements. The Debtor maintains three (3) accounts with Sonabank, N.A. and two (2) accounts with Wells Fargo Bank, N.A. (collectively, "Depository Banks"). A true and accurate list of the Depository Accounts is attached hereto as EXHIBIT A.

11. <u>The Main Deposit Account.</u>  All stores deposit cash into this account daily. All ACH deposits also go directly into this account.

12. <u>The Norcross Account.</u>  This account is used solely by the Norcross, GA warehouse for expenses related solely to this location. The lease for this location is included in the Debtor's Motion to Reject Unexpired Leases filed herein.

13. <u>The Main Operating Account.</u> All operations disbursements are made from this account.

14. <u>The Lockbox Account.</u>  All receipts (except cash) from the Debtor's commercial and retail operations are deposited into this account

15. <u>The Commercial Credit Card Account.</u>  GE Money provides financing that the Debtor makes available to its retail customers and deposits all payments into this account..

16. The Debtor concludes that the Depository Banks are in financially stable banking institutions that carry FDIC insurance.

17, The Debtor seeks a waiver of the U.S. Trustee's requirement that the pre-petition bank accounts be closed and that new post-petition accounts be opened. If the Debtor were obligated to comply with this particular requirement, it would result in substantial disruption to the Debtor's business and impair the Debtor's efforts to reorganize and/or pursue other means of maximizing the value of the bankruptcy estate.

18. Thus, the Debtor must be allowed to continue maintaining the existing bank

accounts in order avoid payment delays to Fitness Resource and/or other potential administrative creditors, to ensure as minimal disruption of the Debtor's business operations as possible, and to assist the Debtor in the successful completion of this Chapter 11 proceeding. For the same reasons, the Debtor must be permitted to open new bank accounts and/or close existing accounts, if and when such action( s) become necessary during this bankruptcy proceeding.

19. This Court, as well as other courts, have waived the U.S. Trustee's bank closing requirement in instances where such a requirement does not serve the rehabilitative purposes of a Chapter 11 proceeding. In doing so, courts have replaced such requirement with alternative procedures in order to afford the same protections. *See e.g., In re S & K Famous Brands, Inc.,* Case No. 09-30805 (Bankr. E.D. Va. Feb. 9, 2009); *In re Circuit City Stores, Inc., et al.,* Case No. 08-35653 (Bankr. E.D. Va. Nov. 12, 2008); *In re Movie Gallery, Inc., et al.,* Case No. 07-33849 (Bankr. E.D. Va. Oct. 17,2007); *In re The Rowe Cos.,* Case No. 06-11142 (Bankr. E.D. Va. Sept. 20, 2006).

20. Accordingly, the Debtor respectfully requests that the Depository Accounts be designated as the debtor-in-possession bank accounts and in doing so, that the Depository Accounts be authorized for continued use and maintenance in the same manner, and with the same account numbers, styles, and documents forms as those used during the pre-petition period.

21. The Debtor represents that in the event the Court grants the relief requested in the Motion, the Debtor will not pay, and will direct Sonabank and Wells Fargo not to pay, any debts incurred prior to the Petition Date without prior approval by the Court.

**B.    The Debtor Should Be Granted the Authority To Continue Use Of Existing Business Forms and Checks.**

22. The Debtor also seeks authorization to continue using all correspondence, business forms (including, but not limited to, letterhead, purchase orders, and invoices), and

5

checks that existed immediately prior to the Petition Date, and without reference to the Debtor's status as a debtor-in-possession in this bankruptcy proceeding.

23. Changing correspondence and business forms would result in significant costs, and would thereby become unduly burdensome to the bankruptcy estate. Requiring a change of correspondence and business forms would also disrupt the Debtor's business, and is unnecessary in that no benefits would be conferred on parties doing business with the Debtor.

24. In addition, most creditors and other parties doing business with the Debtor will become aware of the Debtor's status as a debtor-in-possession upon receiving direct notices of the commencement of this case and other communications with the Debtor, and as a result of press coverage.

25. This Court has routinely granted the same or similar relief in prior Chapter 11 cases. *See e.g., In re Circuit City Stores, Inc., et al.,* Case No. 08-35653 (Bankr. E.D. Va. Nov. 12, 2008); *see also, In re Movie Gallery, Inc., et al.,* Case No. 07-33849 (Bankr. E.D. Va. Oct. 17, 2007); *see also, In re The Rowe Cos.,* Case No. 06-11142 (Bankr. E.D. Va. Sept. 20, 2006).

C. **The Debtor Should Be Authorized To Continue Using Its Existing Cash Management System.**

26. The Debtor's cash management system and procedures constitute ordinary, usual and essential business practices. The cash management system enables the Debtor to, among other things: (i) forecast and report on its cash flow; (ii) monitor collection and disbursement of funds; (iii) provide for timely payments to its secured creditor, Sonabank, N.A.; (iii) track various transactions by each Store; and (iv) reconcile the balances of the Depository Accounts.

**(1) Cash Management System: Sales and Receipts.**

27. The Debtor currently uses a system called Navision as its Point of Sale System

for all stores. Navision tracks the quantity and monetary value of all transactions by individual store locations, *e.g.,* inventory received and sold, customer returns for inventory, customer cancellations, and commissions earned by sales representatives.

28.  After closing each night, managers at each location calculate cash received that day and batch out credit card transactions. The managers then ensure that the cash and sale receipts match the monetary amounts tracked by Navision for all transactions.

29.  On the next business day after deposits have been posted in the Depository Accounts, the Debtor's corporate office reconciles cash out reporting with daily credit card and cash deposits received in each account. This process allows for an efficient way to: (i) protect company assets; (ii) oversee the cash management in the individual Stores; and (iii) quickly identify financial discrepancies which may result from an employee error, fraud or theft.

**(2)    Cash Management System: Fund Disbursements.**

30.  The Debtor makes all operations disbursements from the Main Operating Account.

**(3)    The Debtor's Cash Management System Maintained in the Ordinary Course of Business is Beneficial to the Debtor and the Estate.**

31.  As outlined above, the Debtor's cash management system is highly automated and computerized. The cash management system also includes the necessary accounting controls to enable the Debtor, its creditors, and the Court to trace funds through the system and ensure that all transactions are adequately documented and readily ascertainable. The Debtor will continue to maintain detailed records reflecting all fund transactions.

32.  The Debtor's cash management procedures constitute ordinary, usual, and essential business practice and are similar to those used by other corporate entities. The cash management system also benefits the Debtor in several ways, by allowing it to: (i) forecast and

report cash flows; (ii) monitor collections and disbursement of funds; (iii) provide for timely and accurate balance and presentment information relating to the Debtor and its Stores; and (iv) reduce administrative costs by facilitating the movement of funds.

33. Accordingly, the Debtor requests that the Sonabank and Wells Fargo be authorized and directed to continue to administer the Depository Accounts as such accounts were maintained pre-petition, without interruption, and in the ordinary and usual course of business. The Debtor further requests that Sonabank and Wells Fargo be authorized and directed to pay any and all checks, drafts, wires, and/or electronic fund transfers presented, issued, and/or drawn on the Depository Accounts in connection with post-petition claims, so long as sufficient funds exist in the Depository Accounts.

34. In addition, the Debtor requests that Sonabank and Wells Fargo be directed to refrain from honoring any pre-petition check, draft, wire, and/or electronic fund transfers that are presented, issued, and/or drawn on the Bank Accounts unless: (i) authorized in an order issued by this Court; (ii) not otherwise prohibited by a "stop payment" request made by the Debtor to Wachovia; and (iii) supported by sufficient funds in the Bank Account in question.

35. To effectuate the foregoing, the Debtor further requests that the Depository Banks be authorized and directed to honor all representations from the Debtor regarding which checks, drafts, wires, and/or electronic fund transfers should be honored or dishonored. To the extent that the Debtor has directed that any pre-petition checks, drafts, wires, and/or electronic fund transfers be dishonored, the Debtor reserves the right to issue replacement checks, drafts, wires, and/or electronic fund transfers to pay the dishonored amounts consistent with orders of the Court.

36. The Debtor's business operations require that the existing cash management

8

system continue during this Chapter 11 case. Requiring the Debtor to adopt a new cash management system at this early and critical juncture would be more expensive, create administrative problems and result in the substantial disruption to the Debtor's business. In short, the Debtor's ability to successfully reorganize would be negatively impacted.

37. Moreover, the current cash management system secures significant components of Sonabank's cash collateral and and allows the Debtor to make timely payments to Sonabank via routine sweeps of the Depositary Accounts.

38. Allowing the Debtor to utilize its pre-petition cash management system is consistent with applicable provisions of the Bankruptcy Code. In particular, this Court has the authority to grant the requested relief pursuant to its equitable powers under section I05(a) of the Bankruptcy Code. Section 105(a) provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

39. Indeed, bankruptcy courts routinely permit Chapter 11 debtors to continue using their existing cash management systems, generally treating requests for such relief as a relatively "simple matter." See *In re Baldwin-United Corp.,* 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *see also, In re Columbia Gas Sys., Inc.,* 136 B.R. 930, 934 (Bankr. D. Del. 1992) (recognizing that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash") (internal citations omitted).

40. This Court has granted substantially similar relief in other complex Chapter 11 cases. *See ,e.g., In re S & K Famous Brands, Inc.,* Case No. 09-30805 ( E.D. Va. Feb. 9, 2009); *In re Circuit City Stores, Inc.,* Case No. 08-35653 (Bankr. E.D. Va. Nov. 12, 2008); *In re*

9

*Movie Gallery, Inc.,* Case No. 07-33849 (Bankr. E.D. Va. Oct. 16, 2007); *In re The Rowe Cos.,* Case No. 06-11142 (Bankr. E.D. Va. Sept. 20, 2006). For the foregoing reasons, the Debtor respectfully submits that such relief should be granted here.

**D.     The Debtor Will Incur Immediate and Irreparable Harm If Not Permitted To Continue To Use Its Cash Management System.**

41.     The relief requested is also warranted under Bankruptcy Rule 6003, which provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding the following: ... (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

Fed. R. Bankr. P. 6003.

42.     Fourth Circuit courts have not interpreted the "immediate and irreparable harm" language in the context of Bankruptcy Rule 6003 in any reported decision.[1] However, the Fourth Circuit Court of Appeals has interpreted the same language in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Hughes Network Systems, Inc. v. Interdigital Communications Corp.,* 17 F.3d 691, 694 (4th Cir. 1994). Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Scotts Co. v. United Industries Corp.,* 315 F.3d 264, 283, (4th Cir. 2002) (*citing Direx Israel, Ltd. v. Breakthrough Medical Corp.,* 952 F.2d 802, 812 (4th Cir. 1991)).

---

[1] Although there is not direct authority concerning Bankruptcy Rule 6003 in the Fourth Circuit, at least one bankruptcy court, applying Bankruptcy Rule 6003, concluded that fIrst-day relief in a similar context was warranted because such relief was necessary to avoid irreparable harm. *See In re First NLC Fin. Servs., LLC,* 382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (holding that Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm).

43. To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtor submits that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm as defined by the Fourth Circuit Court of Appeals.

44. Accordingly, the Court should allow for the continued use of the Debtor's cash management system requested herein.

## NOTICE

45. Notice of this Motion will be given to: (i) the Office of the United States Trustee, (ii) all secured creditors, and (iii) the Debtor's twenty (20) largest unsecured creditors. The Debtor submits that, under the circumstances, no other or further notice of the Motion is required.

## WAIVER OF MEMORANDUM OF LAW

46. Pursuant to Local Bankruptcy Rule 90l3-l (G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtor requests that the requirement that all motions be accompanied by a separate memorandum of law be waived.

## NO PRIOR REQUEST

48. No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of an order (i) authorizing, but not directing, continued maintenance of the Debtor's existing bank accounts, and authorizing a waiver of certain operating guidelines relating to the bank accounts; (ii) authorizing, but not

directing, the Debtor's continued use of existing business forms; (iii) authorizing and directing the Debtor's continued use of its existing cash management system in accordance with the means and in the manner set forth in this Motion, and (iv) granting such other further relief as is just.

Date:  September 9, 2011

Respectfully submitted,

FITNESS RESOURCE, INC.
By counsel

      /s/ Kermit A. Rosenberg
Kermit A. Rosenberg (VSB #14975)
Butzel Long Tighe Patton, PLLC
1747 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20006-4604
Telephone: 703.454.2800
Facsimile:  703.454.2805
Email: krosenberg@bltplaw.com
Proposed Counsel for Debtor

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2011, true copies of the foregoing Motion and attached proposed order were served electronically using the Court's Electronic Case Filing System upon all parties entitled to receive such notice and by first class mail, postage prepaid, upon all parties set forth on the mailing list attached to the original Notice of Filing Chapter 11 Petition and First Day Motions and of Hearing on First Day Motions filed with the Clerk of this Court.

      /s/ Kermit A. Rosenberg
KERMIT A. ROSENBERG